Our next case for argument is United States v. Kilgore. And we are ready to hear from the appellant. Detective Jennings sought authority from the magistrate to search the defendant's residence for evidence of child pornography. Detective Jennings defined the term child pornography in the affidavit as images of children engaged in sexually explicit conduct. Detective Jennings provided the magistrate with a number of examples of exactly the type of conduct that would fall in the category of child pornography. And yet, in the probable cause portion of the affidavit, Detective Jennings describes the two images that were uploaded and intercepted as child exploitation materials. Detective Jennings is an experienced officer. She works in the Cyber Crimes Unit, the unit that investigates sex crimes like this one. And the only inference that we can draw from the fact that she used the term child exploitation materials rather than child pornography, given that she understood its legal meaning, is that the two images intercepted were other than child pornography. Doesn't the fact that the affidavit relates that she's working jointly with the Homeland Security Commission and federal law recognizes that child exploitation is the same as child pornography, doesn't it? I'm not entirely willing to concede that issue. I think what the government said was that in chapter 211, title 34, section 2111, the term child exploitation materials were defined to include child pornography. However, we know from that statute that, I think the phrase is, in this chapter, the following definitions apply. From that, we conclude that outside that chapter, those definitions don't apply. So, Mr. Kilgore was convicted of an offense in chapter 110. The National Strategy for Child Exploitation Prevention and Interdiction is, I believe, 211. So, what we would argue is that, at least as it pertains to Mr. Kilgore's offense of conviction, the term child exploitation material has no legal meaning. We can't conclude from the phrase child exploitation materials that the images are in any way sexually related or in any way involve sex, sexual conduct. We certainly can't conclude from that phrase that the images intercepted were illegal to possess. The district court concluded, well, I guess the first thing I would say is, so we have two images. We don't know what they are of because they're not described. We have a phrase that's not defined. The district court, well, the question would be how much weight do we give those in the totality of the circumstances? The district court gave it substantial weight because the district court came to the conclusion that the phrase child exploitation materials and child pornography are interchangeable or synonymous. Again, we don't find meaningful or compelling support for that assertion. Even assuming that that assertion is correct, the real question is whether that information was before the magistrate. We know that fact was not contained in the affidavit. We have no reason to believe that that information was conveyed orally to the magistrate during the application process. Wasn't there different aspects of the affidavit that we could look to assume that the magistrate could certainly infer that we were talking about child pornography here? One thing in particular is the fact that the affidavit recited that he had the prior child pornography offense and that he was a registered sex offender and it applied a current registered sex offender. Why wouldn't that be a fairly strong inference that we are talking about child pornography images here if the term itself isn't enough? The first thing I would say would be that the fact that Mr. Kilgore has this prior conviction is in itself not dispositive. I'm looking at the overall affidavit. Since it's not dispositive in and of itself, we would have to assess it some weight, some value. What we know is that recent convictions are more valuable than older convictions. I'm not really talking about the value of the conviction itself. I'm talking about whether we could infer from some of the language that's included in the affidavit that we're talking about child pornography images here. I don't think that we can make that inference. I don't think that we can make the inference that the images were in any way illegal to possess. I think the best we can do with the information we have is to realize that Detective Jennings knew exactly what child pornography was, its legal definition. She chose not to use that term in describing the images that were recovered. She chose not to describe the images that were recovered to avoid just this problem. The fact that Mr. Kilgore has a prior conviction is just one more thing to consider. We would give it more weight if it was a recent conviction, less weight if it was an older conviction. We can't determine from the affidavit whether it's a recent conviction or an older conviction. We do know that he is still a registered sex offender. The government felt that that was important. They looked at Perrine, I think it was, where the defendant was still on probation. From the fact that he was still on probation, they inferred that it must be a relatively recent conviction. However, this isn't probation. This is a SORNA registry. Possibly most people who register under SORNA may be lifetime registration. Given that SORNA has a lifetime registration possibility, it is much more difficult to make the inference that this is a relatively recent and therefore more valuable in our assessment conviction. We have the two images. We're not sure what they're of. We're not sure whether they involve anything sexual. We're not sure that they're even illegal. We have a conviction that may be 30 years old. It may be 30 days old. We don't know. Again, it's hard to assess value in that circumstance. We know that photodNA was used to determine that they were child exploitation materials, which, because it's the same term, doesn't take us much further down the road in determining what exactly child exploitation materials are. That's the totality of the information the magistrate had before him or her to make a determination as to whether evidence of a crime would be found in Mr. Kilgore's second address, which he wasn't living in when these two images were uploaded. Can you have child exploitation that is legal? Well, we're not talking about child exploitation. We're talking about images of child exploitation. Can you have images of child exploitation that are legal? I think we certainly could. For instance, child exploitation encompasses transporting a minor for an illegal reason, for instance, prostitution. So if you had an image of a minor child being transported, you uploaded that image of a minor child being transported. That would certainly not be an illegal image to possess, upload, distribute. So the answer is yes. Judge Frizzell gave substantial weight to the term child exploitation material, known images of child exploitation material, because based on his experience, his training, his special knowledge, he believed that those known images related to a government database that stored child pornography. And so he concluded that the images that were uploaded could not have been other than child pornography. Again, that may or may not be correct. We don't find any support for that in the government's answer brief. Even if it is correct, the real question again is, was that information before the magistrate? And what we know is that that information was not in the affidavit. Again, we have no reason to believe that that information was conveyed orally to the magistrate. And those facts don't appear to be common sense inference type facts. What they appear to be is knowledge that, if correct, comes from specialized training, not something that we can just infer from a reading of the affidavit. So what we ultimately would say is that the fact that two images were uploaded over the course of two months, given that we don't know what those two images were, given that we don't have any definition or meaningful definition for child exploitation material, given that the magistrate wasn't provided with any information to allow him to make those determinations, given the age of the conviction, we just don't see a minimally sufficient nexus between the illegal activity, if there was illegal activity, the uploading, and the place to be searched, which was a residence from which those images were not uploaded. Because a minimally sufficient nexus doesn't exist, then the good faith under Leon wouldn't apply to this case, and we would be limited to examining whether there was a substantial basis for determining that probable cause exists. And again, it seems a stretch to consider two images, again, that we don't know what they are of, we don't know that they're sexual in nature, we don't know that they're illegal to possess, along with a prior conviction that may be decades old, for all we know, to lead us to search a house in which no criminal activity was known to have taken place. So if there's no more questions, I would save the remainder of my argument for rebuttal. Thank you. May it please the court. My name is Chantelle Dial, and I represent the United States. This court should affirm the district court's denial of Mr. Kilgore's motion to suppress for two reasons. First, the search warrant was supported by probable cause. And second, even if this court determines there wasn't probable cause, the executing officers reasonably and in good faith relied on a neutral magistrate's decision. I want to start with some of the questions that your honors raised. The first was, isn't child exploitation child pornography. Ultimately, this court doesn't have to determine that answer. What we're looking at here, as defense counsel mentioned, is the totality of the circumstances. And the defendant relies quite heavily on the fact that these images were not known. It's two unknown images that just were child exploitation. This is significantly different from an Edwards that the defendant relies on heavily in his brief. Because in Edwards, the court noted that there was no uncertainty regarding the content of the images that the defendant had posted. Here, perhaps there is uncertainty. Perhaps the issuing judge doesn't know for certain that these images of child exploitation are images of child pornography. But that goes then to the second question raised by your honors. Can we infer from the language in the affidavit that these images are referring to child pornography? And the answer is yes. Because as the court are looking to the totality of the circumstances, looking at what the state judge had a substantial basis to determine probable cause. Just from the four corners, the issuing judge knew that the affiant was a detective in the cyber crimes unit. Knew that we were searching for evidence of distribution of child pornography. And that this search was in physical, was searching for physical, digital, or electronic form. Including computers, cell phones, and electronic devices. So more than just images, but also potentially the electronic devices used to upload those images. The issuing judge knew that there were two known images of child exploitation that had been uploaded to KIC. That KIC had reported these images to law enforcement. That photo DNA, which the affiant describes, and I should have referred to this, this is all taken from the warrant, which is volume one, pages 19 and 20. Photo DNA, as the affiant describes, helps detect, disrupt, and report the distribution of child exploitation materials. One more brick that the issuing judge can use to infer that what we're referring to is child pornography or evidence of distribution of child pornography. Does the affidavit include a description of what KIC is and why it does what it does and how it's connected to law enforcement? It does not, your honor. The affidavit only says... So the affiant could get this information from anybody? So there's no compelling weight that we should give to the fact that it came from KIC? Not from the four corners of the affidavit, no. The judge, the issuing judge, may have used his reasonable inferences based on his experience and his experience seeing KIC. But we don't know that, we don't have that, and that's not necessary to find probable cause here. What we do know from the affidavit is that KIC reported these images to law enforcement. We know that the defendant has a prior conviction and that this prior conviction is directly linked to the type of evidence being sought here. It's a prior conviction for possessing or distributing child pornography. And the affiant is requesting permission to search for distribution of child pornography. Was it tied to computerized images? That's what you're searching for, is computerized images, and his prior conviction was also of computerized images? What we know from the affidavit is that his prior conviction was for possessing, distributing, it's a whole host of... Right. Yes, electronic... It doesn't say that. It doesn't say electronic, no. It says procuring, producing, distributing, and possessing child pornography. So it could have just been hard photos? It could have been, yes. But the totality of the circumstances here, where there's these known uploads from an IP address that's then linked to the defendant, support, give a fair probability that this is going to be electronic evidence that's being sought. The affidavit also establishes a sufficient nexus. The affidavit links the defendant to criminal activity and then the defendant to the place to be searched. As this court noted in Bigelow, there are four factors that can be considered for determining if there's sufficient nexus between the activity and the residence. The first three are the type of crime, opportunity for concealment, nature of evidence, all of these this court has held. Common sense suggests that child pornography will be secreted in the home. It's the type of crime that is or the type of evidence that is hoarded, that is held on to and is kept private in a private residence. The most important factor from Bigelow for this case is the fourth one, which is that Bigelow said that sufficient nexus between the criminal activity and the residence could also occur from all reasonable inferences that the issuing judge would make as to where a criminal would likely keep such evidence. So an issuing judge can use her common sense to determine where this would be. Now the affiant does what we would want the affiant to do. She researches, she finds out what is his address and she includes in the affidavit that the images had been uploaded from a prior address, but that based on his sex offenders registration, he was now at a new address. A judge would reasonably infer that the type of evidence sought for here, child pornography images that we know are frequently hoarded or kept, and computers, the personal computers, personal electronics used to upload these images, it is a reasonable inference that the person would move with that evidence. In fact, it would have been unreasonable for the judge to issue a warrant for the prior address because the judge knew that the defendant was no longer at that address. And it's common sense and reasonable that the defendant would move evidence of this crime with him to his new address. It does require us to make a double inference though, because first you want us to make the inference that these were child pornography, images of child pornography. So first we've got to make that inference, don't we? And then once we make that inference, then we can say, well, yes, this would normally be something that would be kept within the individual's home and perhaps moved with their computer because they want to keep it private. You first need to make the inference about the images, and that's the defendant's objection here, and what they were. Yes, the first inference is that this is evidence of distribution of child pornography. I think though, importantly, and defense mentioned this a number of times, is that from the affidavit, we can't conclude that the images were illegal to possess. That's not necessary. What we're looking for here is probable cause. Whether or not there is substantial basis that there may be evidence of a crime, there's a probability that there's evidence of a crime at this address. And the totality of the circumstances presented in this affidavit, and the affidavit could have defined things better, but this court has also noted that an affidavit doesn't have to be a model of specificity. This affidavit did present enough for the issuing judge to consider the totality of the circumstances, to make her inferences, and to find probable cause. There was a substantial basis for that. However, in any event, if the evidence doesn't need to be suppressed, because the executing officers, or excuse me, if the court disagrees, or feels that there is not a substantial basis. And as the court is aware, the review here is very deferential. Really, we're just looking to whether or not the judge had a substantial basis, the issuing judge. If this court ultimately decides that the judge did not have a substantial basis, the officer still acted in good faith when they relied on the warrant that was issued by a neutral judge. The good faith doctrine, of course, is an exception to the exclusionary rule. The goal here is to prevent unlawful activity by the officers. Here, the officer did, the affiant did everything she thought she needed to do, and then had it approved by the judge. And then based her, and then did the search based on that warrant. Of course, good faith is not absolute. And there are four exceptions. I'm only going to focus on the third, which is the affidavit lacking in indicia of probable cause. That would be the only instance here, and that's the only instance alleged here, for why good faith shouldn't apply. Do you know if the affidavit was attached to the warrant when the warrant was executed? When the warrant was executed at Mr. Kilgore's residence? Right. Did the executing officers have the warrant? Have not only the warrant, but also the affidavit? I don't know. I believe the executing officer was also the affiant. I'm not sure if that's what your honor's asking. But I, the question of whether this was not the situation where the affiant put together a bare bones affidavit, then hoping to rely on the ignorance of the executing officers. Here, the executing officer had an affidavit that showed, that had more than an indicia of probable cause. As this court noted in Bigelow, or excuse me. No, that's the affidavit was not bare bones. It was not devoid of any support. In Gonzales, this court noted that good faith only requires some factual basis connecting the place to be searched to the defendant or the suspected criminal activity. Only when this, when, excuse me, I added friendly. When this connection is wholly absent, the affidavit and resulting warrant are then so lacking in the indicia. And that's not what's, that's not what's happening here. In Gonzales, where that quote comes from, there, the affiant had said, this is the defendant. He's done illegal things. And then put an address and said that they wanted to search that address. There was no connection at all to the defendant and the address. There was no, this is the defendant's address or any other connecting information showing that the defendant was linked to the address. That's not what is at issue here. Here, the affiant clearly puts in, this is the defendant's address and this is the place to be searched. So minimal nexus is all that's required for good faith. And the warrant establishes more than minimal nexus as referred to with the big low factors based on the judge's inferences. But this warrant was not one that was so, or this affidavit was not one that was so lacking that good faith wasn't reasonable. Finally, any defect in the warrant would now have been missed by both the issuing judge and the district judge, which of course is not dispositive, but it further supports that the officer's reliance was reasonable. For these reasons, your honors, both the totality of the circumstances analysis and the officer's good faith reliance on the warrant requires or the government would request that this court affirm the district court's ruling. And if there are no other questions, then I would cede the remainder of my time. Hearing none. Thank you. Any rebuttal? I think once again, the warrant didn't meet the minimally sufficient nexus between the criminal activity and the place to be searched. The, or rather the affidavit, the affidavit doesn't even describe criminal activity. What it describes are the two images were uploaded by a person with a prior conviction for child pornography, distribution or possession. So the affidavit doesn't present compelling evidence that a crime occurred, much less the evidence of that crime would even be found in this second home that Mr. Kilgore resided in. I think it's clear that the affidavit could have done a lot more with this affidavit. It's not even clear from the affidavit that the defiant viewed the images. A reasonable inference to be drawn could be that she chose the phrase child exploitation material because it's what this program described the images of. It's, I think the last thing I want to say is that it's not clear that anybody saw the images beyond this program that's either operated by Kik, by the government, or by some other internet company. Looking at the affidavit, we don't even know the answer to that question. So I think that's all I have to say as well, unless there are questions. Thank you, Your Honor. Thank you. Thank you both for your arguments. The case is submitted.